Jessica R. K. Dorman, Esq. (SBN: 279919)
jessica@westcoastlitigation.com
Robert L. Hyde, Esq. (SBN: 227183)
bob@westcoastlitigation.com
**Hyde & Swigart**
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Office Number:        (619) 233-7770
Office Fax Number:    (619) 297-1022

Attorneys for Robert Locke

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Robert Locke,<br><br>Plaintiff,<br><br>v.<br><br>Drive Away Auto,<br><br>Defendant. | Case No: **'15CV490 W    JLB**<br><br>**Complaint For Damages**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. The United States Congress has found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy. Congress wrote the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. (hereinafter "FDCPA"), to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt

collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

2. The California legislature has determined that the banking and credit system and grantors of credit to consumers are dependent upon the collection of just and owing debts and that unfair or deceptive collection practices undermine the public confidence that is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers. The Legislature has further determined that there is a need to ensure that debt collectors exercise this responsibility with fairness, honesty and due regard for the debtor's rights and that debt collectors must be prohibited from engaging in unfair or deceptive acts or practices.

3. Robert Locke, ("Plaintiff"), through Plaintiff's attorneys, brings this action to challenge the actions of Drive Away Auto, ("Defendant"), with regard to attempts by Defendant to unlawfully and abusively collect a debt allegedly owed by Plaintiff, and this conduct caused Plaintiff damages.

4. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to a plaintiff, which Plaintiff alleges on personal knowledge.

5. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

6. Unless otherwise stated, all the conduct engaged in by Defendant took place in California.

7. Any violations by Defendant were knowing, willful, and intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such specific violation.

///

///

///

## JURISDICTION AND VENUE

8. Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331, 50 U.S.C. §§ 501 *et seq.*, and 28 U.S.C. § 1367 for supplemental state claims.

9. This action arises out of Defendant's violations of the Servicemembers Civil Relief Act, 50 U.S.C. §§ 501 *et seq.* ("SCRA"), and the Rosenthal Fair Debt Collection Practices Act, California Civil Code §§ 1788-1788.32 ("Rosenthal Act").

10. Plaintiff resides in San Diego, California.

11. Because Defendant does business within the State of California, including attempting to collect on alleged debts and repossessing personal property of alleged debtors, personal jurisdiction is established.

12. Defendant attempted to collect on Plaintiff's alleged debt while Plaintiff resided in San Diego, California, and also had Plaintiff's vehicle towed in San Diego, California, in order to repossess Plaintiff's vehicle while Plaintiff resided in San Diego, California.

13. Therefore, Venue is proper pursuant to 28 U.S.C. § 1391(b)(2).

14. At all times relevant, Defendant conducted business within the State of California.

## PARTIES

15. Plaintiff is a natural person who resides in the City of San Diego, State of California.

16. Plaintiff is a member of the United States Navy and an active duty servicemember as defined in section 101(d)(1) of title 10, United States Code, and section 400(a)(1) California Military and Veterans Code, and has been an active duty member of the United States Navy since March 5, 2013.

17. Defendant is located in the city of Carrollton, in the State of Georgia.

18. Plaintiff is a natural person from whom a debt collector sought to collect a consumer debt which was due and owing or alleged to be due and owing from

Plaintiff, and is a debtor as that term is defined by California Civil Code § 1788.2(h).

19. Defendant, in the ordinary course of business, regularly, on behalf of himself, herself, or others, engages in debt collection as that term is defined by California Civil Code § 1788.2(b), is therefore a debt collector as that term is defined by California Civil Code § 1788.2(c).

20. This case involves money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction.  As such, this action arises out of a consumer debt and "consumer credit" as those terms are defined by Cal. Civ. Code § 1788.2(f).

## FACTUAL ALLEGATIONS

21. On or around February 15, 2013, Plaintiff lived in Douglasville, Georgia.

22. Sometime on or around February 15, 2013, while living in Georgia, Plaintiff purchased a 2001 Volkswagen Passat from Defendant Drive Away Auto in Douglasville, Georgia.

23. As a result of this February 15, 2013 transaction in which Plaintiff purchased a Volkswagen Passat from Defendant, Plaintiff is alleged to have incurred certain financial obligations.

24. These alleged obligations were money, property, or their equivalent, which is due or owing, or alleged to be due or owing, from a natural person to another person and are therefore a "debt" as that term is defined by California Civil Code §1788.2(d), and a "consumer debt" as that term is defined by California Civil Code §1788.2(f).

25. These alleged obligations bore an interest rate in excess of six percent (6%) per year.

26. On March 5, 2013, Plaintiff enlisted with the United States Navy.

27. On March 5, 2013, Plaintiff became an active duty servicemember of the United States Navy and has been since that date.

28. Sometime after March 5, 2013, Plaintiff attended basic training in Chicago.

29. After basic training, while in "A-School," Plaintiff was explained his rights under the SCRA.

30. Pursuant to 50 U.S.C. § 527(a)(1)(B), an obligation or liability bearing interest at a rate in excess of six percent (6%) per year that is incurred by a servicemember, or the servicemember and the servicemember's spouse jointly, before the servicemember enters military service shall not bear interest at a rate in excess of six percent (6%) during the period of military service.

31. Pursuant to 50 U.S.C. § 527(b)(2), upon receipt of written notice and a copy of orders calling a servicemember to military service, the creditor shall treat the debt in accordance with 50 U.S.C. § 527(a), effective as of the date on which the servicemember is called to military service.

32. While in "A-School," the Navy Legal office sent an initial letter to Defendant addressing the interest rate on Plaintiff's vehicle loan.

33. No response was received to this first letter.

34. Thereafter, Plaintiff was reassigned to a base in San Diego, California.

35. Shortly after arriving in San Diego, Plaintiff sough further assistance from Navy counsel in San Diego and was assigned a Navy legal representative, Lt. Connor O'Brien.

36. On or around March 24, 2014, upon instruction from Lt. O'Brien, Plaintiff mailed a written letter to Defendant informing Defendant that Plaintiff had gone on active duty with the United States Navy as of March 5, 2013.

37. In the same March 24, 2014 letter Plaintiff requested that Defendant reduce the interest rate Defendant was charging on the alleged obligation to no more than six percent (6%) in accordance with 50 U.S.C. § 527(a)(1)(B).

38. In the same March 24, 2014 letter Plaintiff attached a copy of his orders to active duty.

39. Plaintiff mailed this March 24, 2014 letter via UPS mail on March 25, 2014.

40. Shortly thereafter Defendant received this letter, and signed for receipt of Plaintiff's March 24, 2014 letter.
41. Lt. O'Brien, later made several efforts to contact Defendant by Phone to discuss the matter, but no resolution was reached.
42. Sometime thereafter, in approximately April or May of 2014, Plaintiff spoke telephonically with the then-owner of the Defendant company.
43. During this conversation, an agreement was made between Plaintiff and Defendant's owner whereby the interest rate on the alleged debt was adjusted to reflect the maximum allowable interest rate of six percent (6%) per year pursuant to 50 U.S.C. § 527(a).
44. The following day Plaintiff's wife called Defendant to make a payment.
45. During this call Plaintiff's wife spoke with an employee of Defendant named Cliff Foster.
46. Defendant's employee Cliff Foster informed Plaintiff's wife that Defendant's owner had changed his mind and now refused to honor the required reduction of the interest rate to 6% pursuant to 50 U.S.C. § 527(a).
47. Cliff advised Plaintiff's wife no to make payment until Plaintiff and Plaintiff's wife had spoken with legal counsel.
48. However, Plaintiff's wife was nervous about stopping payment altogether and therefore made a payment.
49. Due to Defendant's refusal to reduce the interest rate to the maximum rate allowed pursuant to 50 U.S.C. § 527(a) Plaintiff proceeded to make payments at an interest rate in excess of 6%.
50. Through this conduct, Defendant used an unfair or unconscionable means to attempt to collect a debt, and attempted to collect an amount not permitted by law. Consequently, Defendant violated 15 U.S.C. § 1692f and § 1692f(1).
51. Through this conduct, Defendant violated Cal. Civ. Code § 1788.17 as it incorporates 15 U.S.C. § 1692b to § 1692j.

52. Subsequently, Plaintiff's attorney, Lt. O'Brien, attempted again to convince Defendant to conform to the requirements of 50 U.S.C. § 527(a).
53. Defendant continued to refuse to reduce the interest rate that Plaintiff was being charged to a maximum of 6% pursuant to 50 U.S.C. § 527(a).
54. Approximately one week later, Plaintiff's attorney, Lt. O'Brien, advised Plaintiff to cease making payments.
55. Thereafter, Plaintiff did cease making payments.
56. Sometime thereafter, but before July 2, 2014, Plaintiff allegedly fell behind in the payments allegedly owed on the alleged debt. As it is irrelevant to this action, Plaintiff currently takes no position as to the validity of this alleged debt.
57. Approximately forty (40) days after Plaintiff's conversation with Cliff Foster, Defendant called Plaintiff asking why Plaintiff had not made their most recent payment.
58. This communication was a "debt collection" as Cal. Civ. Code 1788.2(b) defines that phrase, and an "initial communication" consistent with Cal. Civ. Code § 1812.700(b).
59. During this telephonic communication Defendant was attempting to collect on a debt with an interest rate in excess of six percent (6%).
60. Through this conduct, Defendant used an unfair or unconscionable means to attempt to collect a debt, and attempted to collect an amount not permitted by law. Consequently, Defendant violated 15 U.S.C. § 1692f and § 1692f(1).
61. Through this conduct, Defendant violated Cal. Civ. Code § 1788.17 as it incorporates 15 U.S.C. § 1692b to § 1692j.
62. At the time of this telephonic communication, sometime after March 24, 2014, but before July 2, 2014, Plaintiff was an active duty service member with the United States Navy.

///

63. At the time of this telephonic communication, sometime after March 24, 2014, but before July 2, 2014, Defendant had been put on notice that Plaintiff was an active duty service member by Plaintiff's March 24, 2014, letter which Defendant had signed for upon receipt.

64. Pursuant to 50 U.S.C. § 527(a)(1)(B), an obligation or liability bearing interest at a rate in excess of six percent (6%) per year that is incurred by a servicemember, or the servicemember and the servicemember's spouse jointly, before the servicemember enters military service shall not bear interest at a rate in excess of six percent (6%) during the period of military service.

65. During this telephonic communication Plaintiff again explained to Defendant that Plaintiff was an active duty servicemember with the United States Navy.

66. During this telephonic communication Defendant claimed that Defendant had no knowledge of Plaintiff's status as an active duty servicemember.

67. During this telephonic communication Defendant claimed not to have received Plaintiff's March 24, 2014, letter explaining his rights under 50 U.S.C. § 527(a) and invoking those rights.

68. Prior to claiming that they had not received Plaintiff's March 24, 2014, letter Defendant had signed for receipt of the same letter from UPS.

69. After March 24, 2014, but before July 1, 2014, Plaintiff's case was assigned to a different Navy attorney, Lieutenant Commander ("LCDR") Ayana Pitterson.

70. LCDR Pitterson called Defendant multiple times and eventually spoke to someone who claimed that there was new management was in place. This representative of Defendant requested that LCDR Pitterson fax over relevant documents.

71. On or around July 1, 2014, Plaintiff's wife received at least four (4) calls from Defendant.

///

72. Defendant did not leave any messages on Plaintiff's wife's voicemail to identify the purpose of the call.
73. After receiving these four calls, Plaintiff's wife returned Defendant's calls and spoke with an employee named Jeanetta.
74. During this July 1, 2014, telephonic communication Defendant's employee Jeanetta asked Plaintiff's wife why payments hadn't been made on the alleged debt.
75. During this July 1, 2014, telephonic communication Plaintiff's wife explained that Plaintiff's attorney, LCDR Pitterson, was trying to come to an agreement with Defendant regarding the reduction of Plaintiff's interest rate to 6% pursuant to 50 U.S.C. § 527(a).
76. In response to Plaintiff's wife's explanation, Defendant's employee Jeanetta proceeded to yell at Defendant's wife, calling her explanation "Bullshit", and then hung up the phone.
77. Plaintiff then called Defendant and spoke with Jeanetta, attempting again to explain the situation.
78. Defendant's employee Jeanetta proceeded to yell at Plaintiff, again shouting "this is bullshit" and hanging up the phone.
79. Plaintiff's wife then contacted LCDR Pitterson and explained the most recent communication between Defendant and herself.
80. Subsequently, Plaintiff's attorney, LCDR Pitterson, called Defendant and spoke with Jeanetta.
81. Defendant's employee Jeanetta proceeded to yell at LCDR Pitterson and then hang up the phone.
82. A short while later, a different representative contacted LCDR Pitterson to apologize for the previous person's behavior and request that LCDR Pitterson deal directly with this new representative.

///

83. On the same day, LCDR Pitterson proceeded to fax to Defendant all of Plaintiff's documents and paperwork pertaining to the alleged debt.

84. On the same day, LCDR Pitterson proceeded to fax to Defendant all of Plaintiff's documents and paperwork evidencing Plaintiff's right to have his interest rate reduced to 6% pursuant to 50 U.S.C. § 527(a).

85. Thereafter, but before July 2, 2014, LCDR Pitterson advised Plaintiff that Plaintiff should make a $300 payment to Defendant as a demonstration of Plaintiff's good faith.

86. As instructed, Plaintiff's wife called Defendant and spoke with Defendant's employee named Micah.

87. Plaintiff's wife told Defendant's employee Micah that Plaintiff wished to make a $300 payment on Plaintiff's alleged debt.

88. Defendant's employee Micah told Plaintiff's wife that Defendant had received multiple faxed documents and would not accept payment from Plaintiff until Defendant had reviewed all of these documents.

89. Further, Micah advised Plaintiff's wife that a small payment of $300.00 would not be accepted, only a much larger payment to catch up on the loan would be accepted, and if payment was not made, the car would be repossessed by Defendant.

90. Thereafter, but before July 2, 2014, Defendant spoke with LCDR Pitterson and threatened to repossess Plaintiff's vehicle.

91. Thereafter, LCDR Pitterson faxed Defendant a copy of 50 U.S.C. § 532.

92. LCDR Pitterson faxed Defendant a copy of 50 U.S.C. § 532 to inform Defendant of the SCRA's prohibition on non-judicial repossession of an active duty servicemember's personal property, and the penalties associated with such actions.

93. Pursuant to 50 U.S.C. § 532(a)(1)(A) after a servicemember enters military service, a contract by the servicemember for the purchase of real or personal

property (including a motor vehicle) may not be rescinded or terminated for a breach of terms of the contract occurring before or during that person's military service, nor may the property be repossessed for such breach without a court order.

94. On or around July 3, 2014, without a court order, Defendant caused Plaintiff's Volkswagen Passat to be repossessed.

95. On or around July 3, 2014, without a court order, Defendant knowingly repossessed the personal property of a servicemember before or during that person's military service based upon breach of an installment contract for the purchase of real property.

96. Consequently, on or around July 3, 2014, Defendant violated section 50 U.S.C. § 532(a)(1)(A).

97. Through this conduct, Defendant used an unfair or unconscionable means to collect or attempt to collect a debt. Consequently, Defendant violated Cal. Civ. Code § 1788.17, as it incorporates 15 U.S.C. § 1692f.

98. Plaintiff was on deployment from June 16, 2014 to January 16, 2015 and was prohibited from asserting his right personally or protecting his wife from the abusive behavior of Defendant. When Plaintiff's vehicle was repossessed, Plaintiff's wife, was left without any means of transportation. Plaintiff was forced to worry about the safety of his wife while away on deployment because she was left without a vehicle or safe means to acquire necessities of life such as groceries.

99. As a result of this unlawful repossession and debt collection actions by Defendant, Plaintiff has suffered actual damages in the form of mental anguish type damages which manifested in several symptoms including but not limited to: stress, anxiety, sleeplessness, nervousness, restlessness, irritability, frustration, and anger all impacting his work and personal relationships.

## CAUSES OF ACTION

### COUNT I

### SERVICEMEMBERS CIVIL RELIEF ACT (SCRA)

### 50 U.S.C. §§ 501 ET SEQ.

100. Plaintiff repeats, re-alleges, and incorporates by reference, all other paragraphs.

101. The foregoing acts and omissions constitute numerous and multiple violations of the SCRA, including but not limited to each and every one of the above-cited provisions of the SCRA, 50 U.S.C. § 1501 *et seq*.

102. As a result of each and every violation of the FDCPA, Plaintiff is entitled to any appropriate equitable or declaratory relief pursuant to 50 U.S.C. § 597a(a)(1); all other appropriate relief, including monetary damages, pursuant to 50 U.S.C. § 597a(a)(2); and, reasonable attorney's fees and costs pursuant to 50 U.S.C. § 597a(b) from Defendant.

### COUNT II

### ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT (ROSENTHAL ACT)

### CAL. CIV. CODE §§ 1788-1788.32

103. Plaintiff repeats, re-alleges, and incorporates by reference, all other paragraphs.

104. The foregoing acts and omissions constitute numerous and multiple violations of the Rosenthal Act, including but not limited to each and every one of the above-cited provisions of the Rosenthal Act, Cal. Civ. Code §§ 1788-1788.32

105. As a result of each and every violation of the Rosenthal Act, Plaintiff is entitled to any actual damages pursuant to Cal. Civ. Code § 1788.30(a); statutory damages for a knowing or willful violation in the amount up to $1,000.00 pursuant to Cal. Civ. Code § 1788.30(b); and reasonable attorney's fees and costs pursuant to Cal. Civ. Code § 1788.30(c) from Defendant.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered against Defendant, and Plaintiff be awarded damages from Defendant, as follows:

- An award of monetary damages pursuant to 50 U.S.C. § 597a(a)(2);
- An award of costs of litigation and reasonable attorney's fees, pursuant to 50 U.S.C. § 597a(b);
- An award of actual damages pursuant to California Civil Code § 1788.30(a);
- An award of statutory damages of $1,000.00 pursuant to Cal. Civ. Code § 1788.30(b);
- An award of costs of litigation and reasonable attorney's fees, pursuant to Cal. Civ. Code § 1788.30(c).

106. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Respectfully submitted,

**Hyde & Swigart**

Date: March 2, 2015          By: /s/Jessica R. K. Dorman
                                  Jessica R. K. Dorman
                                  Attorneys for Plaintiff